———————————————————————

| | |
|---|---|
| LISA RICCHIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action No.** |
| v. ) | **15-13519-FDS** |
| ) | |
| BIJAL, INC. d/b/a SHANGRI-LA MOTEL; ) | |
| ASHVINKUMAR PATEL; SIMA PATEL; ) | |
| and CLARK McLEAN, ) | |
| ) | |
| Defendants, and ) | |
| ) | |
| PEERLESS INDEMNITY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Intervenor-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LISA RICCHIO; BIJAL, INC. d/b/a ) | |
| SHANGRI-LA MOTEL; ) | |
| ASHVINKUMAR PATEL; SIMA PATEL; ) | |
| and CLARK McLEAN, ) | |
| ) | |
| Intervenor-Defendants. ) | |

———————————————————————)

## MEMORANDUM AND ORDER ON MOTION OF INTERVENOR-PLAINTIFF PEERLESS INDEMNITY INSURANCE CO. FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a dispute concerning the existence of insurance coverage. Intervenor-plaintiff

Peerless Indemnity Insurance Company seeks a declaration that it has no duty to defend or

indemnify defendants Bijal, Inc., d/b/a the Shangri-La Motel; Ashvinkumar (Ashvin) Patel; and

Sima Patel as to claims brought by Lisa Ricchio under the Victims of Trafficking and Violence

Protection Act of 2000 ("TVPA") and the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"). Jurisdiction as to the claims of Ricchio is based on federal-question jurisdiction under 28 U.S.C. § 1331, and, as to the insurance-coverage dispute, on supplemental jurisdiction under 28 U.S.C. § 1367.

Peerless has moved for summary judgment. For the following reasons, the motion will be denied.

## I. Background

### A. Ricchio's Allegations

Plaintiff Lisa Ricchio alleges that she was kidnapped by defendant Clark McLean on June 1, 2011. She alleges that McLean brought her to the Shangri-La Motel in Seekonk, Massachusetts, and held her captive there for a period of several days.

The Shangri-La Motel is owned by defendant Bijal, Inc. Defendants Ashvin and Sima Patel worked and lived at the motel during Ricchio's alleged captivity.

Ricchio contends that she was repeatedly raped and abused by McLean during her captivity, and that McLean made clear to her that he intended to force her to work as a prostitute under his control. She further contends that Bijal and the Patels were aware of the abuse and profited from it.

Ricchio asserts seven claims under the TVPA and TVPRA against McLean, Bijal, and the Patels. Essentially, the complaint alleges that McLean performed various trafficking-related acts prohibited by the TVPA, including, among other things, knowingly harboring, transporting, and obtaining Ricchio for labor or services by means of force and abuse. Ricchio also contends that the Patels and Bijal violated the TVPRA by benefitting financially from the acts of McLean performed at the motel in violation of the TVPA—specifically, by receiving rental income for

the room.

**B.**     **Procedural Background**

Peerless Indemnity Insurance Company is a Massachusetts-based insurer. It issued two insurance policies to Bijal, Inc. covering the relevant time period. On December 16, 2015, it filed a motion to intervene in Ricchio's civil case. The court found that the interests of Peerless would be adequately protected by filing a separate declaratory judgment action and rejected its motion to intervene.

On January 11, 2016, Peerless filed a separate action seeking a declaratory judgment that it was not obligated to defend or indemnify Ashvin Patel, Sima Patel, Bijal, Inc., or Clark McLean in connection with the lawsuit brought by Ricchio. (*See* Civil Action No. 16-10032). The complaint in that case alleged that this court had subject-matter jurisdiction under 28 U.S.C. § 1367 because the claims in the declaratory judgment action were "so related" to the claims brought by Ricchio "that they form part of the same case or controversy." (Peerless Compl. ¶ 8).

On March 29. 2016, Judge Stearns (to whom the case was then assigned) stayed the insurance proceeding pending the outcome of the underlying case. At the request of Peerless, the stay was lifted on May 2, 2017.

On December 10, 2018, the case was reassigned to the undersigned judge.

On September 13, 2019, the Court, concerned that 28 U.S.C. § 1367 did not provide subject matter jurisdiction in an independent case, entered an order to show cause as to jurisdiction. Peerless, seconding the Court's jurisdictional concerns, asked that its declaratory judgment action be considered an intervention in the underlying case and that its 2015 motion to intervene be reconsidered.

On October 3, 2019, the Court granted the motion for reconsideration and consolidated

the declaratory judgment action brought by Peerless with the civil action brought by Ricchio.

Prior to reassignment, Peerless had filed a motion for summary judgment. Both the Bijal defendants and Ricchio have filed oppositions to the motion for summary judgment. All filings in the earlier declaratory judgment action are deemed to have been filed in this action.

C.    **The Standing of Ricchio**

The policies in dispute were issued by Peerless to Bijal, Inc. As noted, both the Bijal defendants and Ricchio have opposed the motion of Peerless. Ricchio, however, is neither a named insured nor an employee or agent of an insured. There is therefore a threshold question whether she has standing to contest the issue of the coverage of the policy.

Ordinarily, the standing of a third party to litigate a contract action is limited. *See, e.g.,* 13 WILLISTON ON CONTRACTS § 37:7 (4th ed. 2019) (highlighting limitations on third parties to contest contracts under traditional intended and incidental beneficiary doctrines). However, such standing is often found to exist in insurance coverage disputes. *See Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009) ("[P]ermitting another party to proceed is especially powerful in the context of third-party liability insurance, where the insured may lose interest and the injured party has the primary motivation to pursue the claim."). The issue arises primarily in two contexts: when the insured has defaulted in the insurance company's declaratory judgment action and when, as here, the insurance company has named an uninsured third party in its suit. In the former case, courts have repeatedly held that the third party has standing. *See Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir. 1962) ("[I]n a declaratory judgment action an actual controversy exists between an injured third party—not a party to the contract of insurance—and the plaintiff insurer.") (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941)); *Fed. Kemper Ins. Co. v. Rauscher,* 807 F.2d 345,

353 (3d Cir. 1986) ("It would be anomalous to hold that the [uninsured third party] should not be given an opportunity to establish their case against [the insurance company] because of a default which they could not prevent."); *Metropolitan Property and Cas. Ins. Co. v. Devlin*, 104 F.Supp.3d 126, 127 (D. Mass. 2015) (same). Where an insurance company has named a third party as a defendant in its declaratory judgment action, third-party standing to oppose the case is similarly recognized. *See Penn America Ins. Co. v. Valade*, 28 Fed. Appx. 253, 257 (4th Cir. 2002) ("[W]e recognize[] that the third party's interest in defining the scope of insurance coverage is independent of the interest of the insured. When an insurer initiates a declaratory judgment action against both an injured third party and its insured, the injured third party acquires standing—independent of that of the insured—to defend itself in the declaratory judgment proceeding.") (citing *Fed. Kemper Ins.*, 807 F.2d at 353).

Under the circumstances, the Court finds that Ricchio has standing to oppose the summary judgment motion filed by Peerless, and will therefore consider her arguments.

### D.   The Insurance Policies

Peerless issued two insurance policies to Bijal, Inc. for the policy period of June 26, 2010, through June 26, 2011: a general liability policy and an umbrella policy. (Peerless SUF ¶ 31, 32).[1]

The general liability policy provided two types of coverage. Under "Coverage A," entitled "Bodily Injury and Property Damage Liability," Peerless agreed to "pay those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Peerless SUF Ex. 2 at 156). Coverage A also provided that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1) the

---

[1] Citations referring to filings on this issue are references to filings by Peerless in the now-closed separate declaratory judgment action, Civil Action No. 16-10032.

'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'. . . ." (*Id.*). The policy further provided that "'[o]ccurrence' means an accident including continuous or repeated exposure to substantially the same general conditions." (*Id.* at 169).

Various categories of injuries were excluded from the insurance provided by Coverage A. Exclusion (o), entitled "Personal and Advertising Injury," provided that coverage did not apply to "'bodily injury' arising out of 'personal and advertising injury.'" (*Id.* at 160). "Personal and advertising injury" was defined as "injury, including consequential 'bodily injury,' arising out of one or more" of a variety of "offenses," including "false . . . imprisonment." (*Id.* at 169).

Under "Coverage B," entitled "Personal and Advertising Injury Liability," Peerless agreed to "pay those sums that the insured become legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (*Id.* at 160). Coverage B further provided that "[t]his insurance applies to 'personal and advertising injury' caused by an offense arising out of [the insured's] business but only if the offense was committed in the 'coverage territory' during the policy period." (*Id.* at 161).

Like Coverage A, Coverage B provided various categories of exclusions to which the policy did not apply. Exclusion (d), entitled "Criminal Acts," provided that the insurance did not apply to "'[p]ersonal and advertising injury' arising out of a criminal act committed by or at the direction of the insured." (*Id.* at 161).

The umbrella policy provided that Peerless would pay "those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies." (Pl. Ex. 3 at 44). More specifically, the policy provided that the umbrella coverage applied to

"'bodily injury' or 'property damage' only if . . . the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'" and to "'[p]ersonal and advertising injury' caused by an 'offense' arising out of [the insured's] business but only if the 'offense' was committed in the 'coverage territory' during the [p]olicy [p]eriod." (*Id.*).

Like the general liability policy, the umbrella policy also provided various categories of exclusions. The exclusion relevant here, exclusion (s), entitled "Personal and Advertising Injury," provided that the umbrella insurance did not apply to "personal and advertising injury . . . [a]rising out of a criminal act committed by or at the direction of any insured." (*Id.* at 53).

**II.**     **Analysis**

    **A.**     **Duty to Defend**

Peerless seeks declarations that it does not owe a duty to defend and that it does not owe a duty to indemnify.

As a general matter, "the issue of indemnification must await the completing of trial or settlement." *AIG Prop. Cas. Co. v. Green*, 217 F. Supp. 3d 415, 429 (D. Mass. 2016). There is, however, "a meaningful difference between an insurer's duty to defend . . . and a duty to indemnify." *Wilkinson v. Citation Ins. Co.*, 447 Mass. 663, 671 (2006). Unlike the duty to indemnify, which "arises only after the insured's liability has been established," "[t]he duty to defend arises in situations involving . . . actual litigation by a third party, a context in which time is of the essence, and in which cost and complexity can compound each passing day." *Id.* Accordingly, while courts generally consider that an insurer's duty to indemnify is not ripe until liability is resolved, courts adjudicate an insurer's duty to defend even while the lawsuit for liability is still pending. *See, e.g., Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F.

Supp. 2d 348, 353 (D. Del. 2009) ("In general, in the context of a declaratory judgment action, an insurer's duty to defend an insured in an underlying action is ripe."); *see also* 16 COUCH ON INSURANCE § 227:29 (3d Ed. 2019) ("[W]hether an insurer has a duty to defend a suit against its insured is generally considered a controversy ripe for declaratory relief, even when the issue of the insurer's actual liability in the underlying suit may not be considered until after a resolution of that suit.").  Accordingly, the issue of whether Peerless has a duty to defend the Patels and Bijal is ripe for adjudication.

"The legal standards governing an insurer's duty to defend are slightly different than those conventionally applied to a motion for summary judgment.  An insurer's duty to defend is determined by examining (1) the insurance policy; (2) the facts alleged against the insured; and (3) facts known or readily knowable by the insurer." *Metropolitan Prop. and Cas. Ins. Co. v. Devlin*, 95 F. Supp. 3d 278, 281 (D. Mass. 2015).  "In order for the duty [to defend] to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage.  There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 200-01 (2010) (quoting *Sterilite Corp. v. Cont'l Cas. Co.*, 17 Mass. App. Ct. 316, 319 (1983)).  "[I]f the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Liberty Mut. Ins. Co. v. SCA Services, Inc.*, 412 Mass. 330, 332 (1992) (internal quotations omitted).

"Under Massachusetts law, [t]he proper interpretation of an insurance policy is a matter of law to be decided by a court, not a jury." *U.S. Liability Ins. Co. v. Benchmark Const. Services, Inc.*, 797 F.3d 116, 119 (1st Cir. 2015) (quoting *Boazoa v. Safety Ins. Co.*, 462 Mass.

346, 350 (2012)).  An insurance policy is "construe[d] . . . under the general rules of contract interpretation[,] . . . begin[ning] with the actual language of the policies, given its plain and ordinary meaning."  *AIG Property Cas. Co. v. Cosby*, 892 F.3d 25, 27 (1st Cir. 2018) (quoting *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000)).  "Ambiguities are to be construed against the insurer and in favor of the insured."  *U.S. Liability*, 797 F.3d at 120.  "The insurer bears the burden of demonstrating that an exclusion exists that precludes coverage."  *Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 97 (1st Cir. 2012) (internal quotations omitted).

### 1.    General Liability Coverage

### a.    Coverage A – Bodily Injury and Property Damage Liability

Peerless contends that recovery under Coverage A should be barred by exclusion (o). Again, exclusion (o) provides that Coverage A does not apply to "bodily injury arising out of personal . . . injury."  (internal quotation marks omitted).  The policy defines "personal . . . injury" to include, among other things, "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:  . . . False arrest, detention or imprisonment . . . ."

Peerless contends that all of Ricchio's claims are barred by exclusion (o) because they "arise out of [her] false imprisonment" and thus arise out of "personal . . . injury."  It relies on a line of Massachusetts cases that have interpreted the phrase "arising out of" broadly in the context of insurance policies.

For example, in *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 457 (1999), the Supreme Judicial Court held that "[t]he phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law."  "Indeed,"

the court continued, the phrase "suggest[s] a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct." *Id.*

In *Fuller v. First Financial Ins. Co.*, 448 Mass. 1 (2006), the SJC reaffirmed the breadth of the phrase under Massachusetts law. In that case, a woman was taken by knifepoint while entering an apartment building and was subsequently stabbed and raped by her captor. *Id.* at 2-3. The owner of the apartment building carried a general liability insurance policy that excluded coverage for "bodily injury . . . arising out of assault or battery." *Id.* at 3. The question before the court was whether any damages attributable to the rape and kidnapping fell within the exclusion. Taking guidance from *Bagley*, the court concluded that the damages arose out of the captor's initial assault, and thus fell within the exclusion. *Id.* at 6.

Ricchio first contends that this case is distinguishable from *Fuller*.[2] Essentially, she contends that the source of her personal injury was not her false imprisonment, but rather McLean's act of trafficking her for labor and sex. However, she provides nothing to suggest why her alleged injuries should be understood as "arising out" of her trafficking but not out of her imprisonment. Indeed, it is unclear how the trafficking could have occurred if she had not been imprisoned. Nor does she explain why her injuries could not arise out of multiple sources. For example, an automobile accident caused by an intoxicated driver who was speeding could

---

[2] Ricchio also contends that because Peerless "barely raised" its argument concerning exclusion (o) in its initial memorandum in support of its motion for summary judgment, "and in fact, [] took a *contrary* position" in that memorandum, it should be deemed to have waived its opportunity to raise the argument. *See United States v. Marti-Lon*, 524 F.3d 295, 299 n.2 (1st Cir. 2008) (holding that "issues 'advanced for the first time in an appellant's reply brief are deemed to have been waived'") (quoting *United States v. Eirby*, 515 F.3d 31, 36 n.4 (1st Cir. 2008)). The Court will not deem the argument waived here, as Peerless did in fact raise—although perhaps "barely"—the issue of the exclusion in its initial memorandum.

fairly be said to arise out of intoxicated driving *and* driving over the speed limit.

Ricchio's second contention is based on the recent decision of the First Circuit in *AIG Property Casualty Co. v. Cosby*, 892 F.3d 25 (1st Cir. 2018). In substance, she argues that the court has narrowed the understanding of the phrase "arising out of" in the context of insurance policies. In that case, a group of women had sued a celebrity entertainer for defamation after he publicly denied their accusations of sexual assault. *Id.* at 26. The entertainer was insured under a homeowners policy that excluded costs "arising out of any actual, alleged[,] or threatened . . . [s]exual molestation, misconduct, harassment[,] . . . or . . . [s]exual, physical or mental abuse." *Id.* at 26-27. He was also insured under an umbrella policy that similarly excluded costs "[a]rising out of any actual, alleged[,] or threatened . . . [s]exual misconduct, molestation or harassment[,] . . . or . . . sexual, physical or mental abuse." *Id.* The insurer sought a declaratory judgment that it did not owe a duty to defend against the defamation claims, contending that the claims "arose out of" his alleged sexual assaults. *Id.* at 27.

The insured moved for judgment on the pleadings, and the district court ruled in his favor. *Id.* On appeal, the First Circuit affirmed and held that the insurer had a duty to defend. *Id.* In so doing, the court addressed the various ways in which the SJC had interpreted the term "arising out of." At times, the First Circuit found, the SJC had interpreted "arising out of" as indicating "a causation more analogous to 'but for' causation." *Id.* at 28 (quoting *Fuller*, 448 Mass. at 6). However, it also noted, "in a slightly earlier decision," the SJC had held that "the expression does not refer to all circumstances in which the injury would not have occurred 'but for' the excluded activity." *Id.* (quoting *Rischitelli v. Safety Ins. Co.*, 423 Mass. 703, 704 (1996)). In addition, it noted, Massachusetts courts had also interpreted the term to require a "'sufficiently close relationship'" or a 'reasonably apparent' causal connection between the

injury and relevant event." *Id.* (quoting *Commerce Ins. Co. v. Ultimate Livery Serv., Inc.*, 452 Mass. 639, 653-54 (2008)). "Ultimately," the court held, "[a] judgment call . . . must be made as to where the facts of the case fall along a continuum of causation." *Id.* (quoting *Am. Home Assur. Co. v. First Specialty Ins. Corp.*, 73 Mass. App. Ct. 1, 6 (Mass. App. Ct. 2008)).

"Applying [those] principles of Massachusetts law d[id] not supply an easy answer to the question before" the court. *Id.* at 28. Indeed, the court did not even "determine whether the homeowners policy's 'arising out of' exclusion, standing on its own," served to exclude coverage in this instance. *Id.* Instead, the court reached its decision by looking to "another, more broadly worded sexual-misconduct exclusion in the umbrella policy." *Id.*

The umbrella policy in question also provided coverage for "Limited Charitable Board Directors and Trustees Liability." *Id.* That coverage was "subject to an exclusion that applie[d] to claims for damages '[a]rising out of, *or in any way involving, directly or indirectly,* any alleged sexual misconduct." *Id.* (emphasis added). In the First Circuit's view, the fact that "this separate, specific sexual-misconduct exclusion was drafted so closely to a but-for view," suggested that "the umbrella policy's more laconic, generally applicable counterpart may most reasonably be read, in the circumstances of [the] case, as imposing a standard closer along the continuum to proximate causation than but-for [causation]." *Id.* The court made clear to limit its holding, however, noting that it was "not hold[ing] that 'arising out of' [was] an inherently ambiguous term," but rather that its decision was "confined to this case where the ambiguity question is close to begin with and where another sexual-misconduct exclusion is worded more broadly." *Id.* at 29.

Ricchio contends that the policy here, like the umbrella policy in *AIG*, contains other "broader" exclusions that suggest a narrower reading of the phrase "arising out of . . . false

imprisonment."  In particular, she points to her policy's "asbestos exclusion," which bars

coverage for:

> [b]odily injury', 'property damage' or 'personal and advertising injury' *arising,
> in whole or in part, either directly or indirectly out of* the manufacture, storage,
> processing, mining, use, sale, installation, removal, disposal, distribution,
> handling, inhalation, ingestion, absorption, or existence of, exposure to or contact
> with asbestos, asbestos contained in goods, products or materials, asbestos fibers or
> asbestos dust."

(Def. Supp. SOF ¶ 53) (emphasis added).  That broad language, she contends, like the language

in *AIG*, suggests "but-for" causation; in turn, the absence of that language in the policy's "false

imprisonment" exception, "push" that exception "closer along the continuum to proximate

causation."  (Def. Sur-Reply Mem. at 5).

     The exclusions in the policy, however, are not analogous to those in *AIG*.  The exclusions

in *AIG* both concerned the same topic—sexual assault.  The fact that one exclusion contained

broader language, therefore, suggested that other exclusion was meant to be narrower.  The

exclusions in Ricchio's case, by contrast, address completely different topics.  Because the

exclusions deal with different topics, the fact that one uses broader language does not have any

obvious bearing on whether the other exclusion was intended to be read more narrowly.  That

distinction is all the more compelling given the topic of the broader clause—asbestos liability is

a singularly expansive and complex source of insurance risk, and it is not surprising that an

insurance contract took extra pains to exclude such coverage.  *See generally* Deborah R. Hensler,

*Asbestos Litigation in the United States: Triumph and Failure of the Civil Justice System*,

AMERICAN LAW INSTITUTE-AMERICAN BAR ASSOCIATION CONTINUING EDUCATION, 11-14

(2006).

     In short, unlike in *AIG*, nothing in the policy here suggests that the exclusion for injuries

"arising out of . . . false imprisonment" should be read narrowly.  The Court will therefore

construe the phrase "arising out of" to have its typical meaning under Massachusetts law. Doing so here—that is, making the "judgment call . . . as to where the facts of the case fall along a continuum of causation"—leads here to the conclusion that Ricchio's injuries arose out of her false imprisonment.

Accordingly, because Ricchio's injuries "arise out" of her false imprisonment, they are excluded from coverage under Coverage A.

### b.     Coverage B – Personal Injury Liability

As noted, Coverage B provides coverage for "'personal . . . injury' caused by an offense arising out of [the insured's] business . . . ." Peerless makes three arguments as to why Ricchio's injuries should not be included under Coverage B.

First—and somewhat inconsistently—Peerless contends that Ricchio's injuries do not amount to a personal injury because they are "based upon alleged violations of the TVPA," and the TVPA "does not constitute a 'personal . . . injury.'" (Int.-Pl. Mem. in Supp. 11).

It is not entirely clear what Peerless means by that. The relevant question is whether Ricchio's injuries—which she alleges were caused by violations of the TVPA—constitute a personal injury. Because the definition of personal injury under the policy includes injuries arising out of false imprisonment, and because Ricchio's injuries at least in part arose out of her false imprisonment, the answer to that question is yes.

Second, Peerless contends that Ricchio's injuries were not caused by an offense "arising out" of Bijal's business, because Bijal is not "in the business of human trafficking." The trafficking that allegedly took place here, however, encompassed multiple acts, including the Patels' alleged agreement to continue renting a room to McLean, providing him with the privacy he needed to perform the abuse. And it is clear that the act of renting a room to McLean satisfies

the "two-prong test" used by Massachusetts courts to "determin[e]" whether "an activity" that caused an injury "ar[ose] out of . . . [an] insured's business." *Preferred Mutual Ins. Co. v. Vermont Mut. Ins. Co.*, 87 Mass. App. Ct. 510, 514 (2015). That test, as the name suggests, requires asking two questions: (1) whether the activity is "one in which the insured regularly engages as a means of livelihood," and (2) whether "the purpose of the activity [is] be to obtain monetary gain." *Id.* Here, the complaint clearly alleges that defendants regularly rented out rooms to overnight guests, and that they did so for the purpose of making money. Indeed, providing rooms for money is surely the core function of Bijal's business as a motel. Accordingly, Ricchio has shown that her alleged injuries were caused, at least in part, by an offense arising out of Bijal's business.

Third, Peerless contends that Ricchio's claims are barred by exclusion (d), which excludes coverage for "'[p]ersonal . . . injury' arising out of a criminal act committed by or at the direction of the insured."[3] Essentially, Peerless contends that Ricchio's injuries were caused by criminal violations of the TVPA committed by the Patels, and therefore fall within the exclusion.

Ricchio responds that while a jury could find that McLean committed criminal acts in violation of the TVPA, defendants are alleged to have violated only a *civil* provision of the TVPRA by benefitting from McLean's crimes. Thus, she contends, exclusion (d), which would require the criminal act to have been committed *by or at the direction of* defendants, does not apply. The inquiry, then, is whether the relevant statutory structure, as applied to Ricchio's claims, could reasonably be interpreted to find that defendants could have violated the civil provision of the acts without having also violated any of the criminal ones.

---

[3] Peerless contends that this exclusion bars coverage under both Coverage A and B. Because its argument is the same as to both types of coverage, and because the Court has already concluded that insurance under Coverage A is barred by the "false imprisonment" exclusion, the Court will address only the application of the criminal acts exclusion to Coverage B.

The TVPA was passed in 2000 and established various criminal offenses concerning human trafficking. (Pub. L. 106-386, 114 Stat. 1464). Those offenses included, among others, providing or obtaining forced labor (codified at 18 U.S.C. § 1589); trafficking with respect to peonage, slavery, involuntary servitude or forced labor (codified at 18 U.S.C. § 1590); sex trafficking of children by force, fraud, or coercion (codified at 18 U.S.C. § 1591); removing or destroying a government identification document in the course of a trafficking violation (codified at 18 U.S.C. § 1592); attempting to violate an offense prohibited by the act (codified at 18 U.S.C. § 1594); and conspiring to violate an offense prohibited by the act (codified at 18 U.S.C. § 1594).

Three years later, Congress passed the TVPRA, which, among other things, established a civil right of action for trafficking victims. (Pub. L. 108-193, 117 Stat. 2875). The act includes a civil remedy, which provides that "[a]n individual who is a victim of a violation of [18 U.S.C. §§] 1589, 1590, or 1591 . . . may bring a civil action against the perpetrator . . . ." 18 U.S.C. § 1595.

In 2008, Congress passed another reauthorization of the act, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008. (Pub. L. 110-457, 122 Stat. 5044). Among other things, the 2008 act amended 18 U.S.C. § 1589 to criminalize "knowingly benefit[ting], . . ., from participation in a venture which has engaged in the providing or obtaining of labor or services" by an action in violation of the act "knowing or in reckless disregard of the fact" that the venture was so engaged. Similarly, the 2008 act amended 18 U.S.C. § 1595 to allow a victim to bring a civil action against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of the act. Finally, and again in a

similar vein, the 2008 act established a criminal provision punishing "[w]hoever knowingly benefit[s], financially or by receiving anything of value, from participat[ing] in a venture which has engaged in any act in violation of . . . [§] 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation." 18 U.S.C. § 1593A.

Thus, each criminal provision of the TVPA has a *mens rea* requirement of knowing or reckless conduct by the accused. *See* 18 U.S.C. §§ 1589(a); 1590(a); 1591(a); 1594(a-b); 1593A. In contrast, the civil provision of the TVPRA requires only that one "knowingly benefit[], . . . from participation in a venture which that person *knew or should have known* has engaged in an act in violation of [the TVPA]" to be held liable. 18 U.S.C. § 1595 (emphasis added). The phrase "knew or should have known," echoes common language used in describing an objective standard of negligence. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) (allowing claims of liability under the TVPRA to proceed against two hotels and finding that the statute "invokes a negligence standard"); *see also, e.g.,* Dan B. Dobbs et al., DOBB'S LAW OF TORTS § 159 (2019) (using phrase "knew . . . or should have known it" to describe negligence standard based on objective reasonable person); *Vance v. Ball State Univ.*, 570 U.S. 421, 453-54 (2013) (". . . if the harassing employee is a co-worker, a negligence standard applies. To satisfy that standard, the complainant must show that the employer knew or should have known of the offensive conduct . . . ."). In short, it is possible for a defendant to be civilly liable without having violated any of the criminal portions of the TVPA, because the statute permits recovery under a civil standard even in the absence of proof of intentional conduct.

The Court must next consider whether the allegations within the complaint are "reasonably susceptible" to a "possibility" of insurance liability under the coverage. In her

complaint, Ricchio asserts six claims (claims 1-3 and 5-7) against the Patels and Bijal under 18

U.S.C. § 1595(a).[4]  In essence, the six claims allege that the Patels and Bijal violated the TVPA

in the following ways:

- Claim 1:  that they "knowingly benefitted from participat[ing] in [] McLean's venture, knowing or in reckless disregard of the fact that the venture was engaged in the providing or obtaining of [] Ricchio's labor or services by means of [] force . . ." in violation of 18 U.S.C. § 1589.  (emphasis added).

- Claim 2:  that they "knowingly harbored [] Ricchio at the Shangri-La Motel," "knowingly benefitted from participation in [] McLean's venture which they knew or should have known was engaged in an act in violation of the TVPA," and "aided and abetted [] McLean's violations of 18 U.S.C. § 1590(a)." (emphasis added).

- Claim 3:  that they "knowingly harbored and maintained [] Ricchio at the Shangri-La Motel, and benefitted from her labor and services, knowing or in reckless disregard of the fact that means of force, fraud, [and] coercion . . . would be used to force [] Ricchio to engage in commercial sex acts," "knowingly benefitted from participation in [] McLean's venture, knowing or in reckless disregard of the fact that means of force . . . would be used to cause . . . Ricchio to engage in a commercial sex act ," and "aided and abetted [] McLean[]," all in violation of 18 U.S.C. § 1591(a).

- Claim 5:  that they "conspired to violate 18 U.S.C. §§ 1589, 1590 and/or 1591 by agreeing or conspiring to obtain or provide [] Ricchio's forced labor and sexual services in violation of 18 U.S.C. § 1589, trafficking [] Ricchio in violation of 18 U.S.C. § 1590, and sex trafficking [] Ricchio in violation of 18 U.S.C. § 1591" all in violation of 18 U.S.C. § 1594.

- Claim 6:  that they "attempted to violate 18 U.S.C. §§ 1589, 1590 and/or 1591 by attempting to obtain or provide [] Ricchio's forced labor and sexual services in violation of 18 U.S.C. § 1589, trafficking [] Ricchio in violation of 18 U.S.C. § 1590, and sex trafficking [] Ricchio in violation of 18 U.S.C. § 1591" all in violation of 18 U.S.C. § 1594.

- Claim 7:  that they "violated 18 U.S.C. § 1593A," which "makes it a crime to knowingly benefit, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of . . . 18 U.S.C. § 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation."

(Ricchio Compl. ¶ 50-51, 57, 63, 74, 80, 85-86).

---

[4] Each of those six claims are also asserted against McLean.

Those claims are all cast in terms of intentional, not negligent, conduct. Nonetheless, for a duty to defend to exist, the complaint need only show, "through general allegations, a possibility that the liability claim falls within the insurance coverage." *Billings*, 458 Mass. at 200-01. *Billings* was a coverage dispute involving an underlying suit for intentional infliction of emotional distress. *Id.* at 200-03. The insurance policy covered the insured for suits that claimed "malicious prosecution[,] [l]ibel, slander or defamation of character." *Id.* at 194. The court held that the insurer nonetheless had a duty to defend. It so held because "although pleaded in support of a claim of intentional infliction of emotional distress, [the complaint] is reasonably susceptible [to] an interpretation that roughly sketched a claim of libel, slander, or defamation." *Id.* at 201.

That same principle controls here. Each of Ricchio's claims includes allegations of criminal conduct by the Patels, but the complaint is "reasonably susceptible" to an interpretation finding only negligence. In fact, unlike in *Billings*, where the actual claim brought against the insured was not covered, Ricchio's claims are brought under a civil statute where coverage could exist.

Two considerations guide that finding. First, "the facts alleged in the complaint [need not] . . . unequivocally make out a claim within the coverage" for a duty to defend to attach. *Id.* Thus, the Court is not bound to presume all allegations are perfectly accurate as pleaded in assessing the possibility of coverage; a "rough[] sketch" of a covered claim will do. *Id.* Second, it is commonplace for allegations in a complaint to outline only one, relatively extreme, version of events. The fact that the complaint alleges intentional conduct does not preclude an interpretation that it also includes lesser allegations of negligent conduct. That approach accords with the Massachusetts duty to defend standard that requires only a "general allegation"

susceptible to a "possibility" of liability insurance coverage.

Accordingly, the Court concludes that the claims asserted by Ricchio are reasonably susceptible to a possibility of insurance liability under Coverage B. That, in turn, means that Peerless has a duty to defend under the policy. The Court expresses no view as to whether Peerless likewise has a duty to indemnify, which, as noted, is determined under a different standard.

### 2.        Umbrella Liability Coverage

Finally, Peerless contends that Ricchio's injuries do not warrant coverage under Bijal's umbrella policy. As noted, the umbrella policy provides that Peerless will pay "those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies." *See supra* p. 5-7.

As with Coverage A, any "bodily injury" damages that Ricchio may have experienced are not recoverable due to exclusion (o). "Personal and advertising injury" damages, however, are covered by the umbrella policy. The umbrella policy contains a "criminal act" exclusion identical to that discussed above for Coverage B. Accordingly, and for the reasons stated above, Peerless has a duty to defend under the umbrella liability policy.

### B.        Duty to Indemnify

In general, "the issue of indemnification must await the completing of trial or settlement," *AIG Prop. Cas. Co. v. Green*, 217 F. Supp. 3d 415, 429 (D. Mass. 2016). It is not clear what, if any, liability will be imposed on the Bijan defendants, or according to what specific theories. The issue of indemnification is therefore not ripe for consideration by the Court.

**III.**     **<u>Conclusion</u>**

For the foregoing reasons, the motion of Peerless Indemnity Insurance Company for

summary judgment is DENIED.

**So Ordered.**

/s/  F. Dennis Saylor IV     
F. Dennis Saylor IV

Dated: November 22, 2019                United States District Judge